2013 VT 97



In re Ferrera & Fenn Gravel
Pit (2012-456)

 

2013 VT 97

 

[Filed 18-Oct-2013]

 

 NOTICE:  This opinion
is subject to motions for reargument under V.R.A.P. 40 as well as formal
revision before publication in the Vermont Reports.  Readers are requested
to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 


  
 2013 VT 97
 
  


 No. 2012-456
 
  


 In re Ferrera & Fenn Gravel
 Pit
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Superior Court,
 
 
  
 
 
 Environmental Division
 
 
  
 
 
  
 
 
  
 
 
 May Term, 2013
 
 
  
 
 
  
 
 
 Thomas
 S. Durkin, J.
 
 
  
 
 Mark G. Hall of Paul Frank + Collins P.C., Burlington, and
Charles J. Ferrera, Honolulu,

  Hawaii, for Appellants.

 

Benjamin W. Putnam of Neuse, Duprey &
Putnam, P.C., Middlebury, for Appellee.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
DOOLEY, J.   Applicant Charles Ferrera and property
owners Ronald and Susan Fenn (hereafter “applicants) appeal from a decision of
the Superior Court, Environmental Division affirming the Town of Middlebury’s
denial of their application to operate a gravel pit.  Applicants contend:
(1) several key findings and conclusions were unsupported by the evidence; and
(2) provisions of the Town’s zoning regulations are unconstitutionally
vague.  We affirm.

¶ 2.            
We first summarize the salient facts and procedural history. 
Additional material facts will be set forth in the discussion that
follows.  Applicants submitted a proposal to construct a gravel pit on a
71.5-acre property adjacent to Route 116 in the Town of Middlebury.  Just
north of the proposed project site is the Lindale residential community; to the
west across Route 116 is another residential area known as the Butternut Ridge
neighborhood.  Several existing gravel-extraction companies also operate
within several miles of the project.  

¶ 3.            
Applicants’ property lies within both a Medium Density Residential (MDR)
and Forest Conservation District.  The proposed sixteen-acre gravel pit
lies entirely within the Forest District, while the proposed 2300-foot access
road from Route 116 crosses through both districts.  Although gravel
extraction is not allowed in the MDR district, it is a conditional use in the
Forest District, and the Design Review Board (DRB) consequently subjected the
proposal to conditional-use review under a provision of the Town’s zoning
regulations requiring application of the rules pertaining to the “less
restricted district” in mixed-zoning districts. Town of
Middlebury Zoning & Subdivision Regulations, § 430(10) (hereafter
“Regulations”).  

¶ 4.            
The DRB conducted a site visit in October 2008, and held public hearings
over the course of ten days concluding in August 2010.  A thirteen-page
written decision issued the following month.  The DRB concluded that the
proposed project failed to comply with eight provisions of the zoning
regulations, including the requirement that the project “shall not have an
undue adverse effect on the character of the neighborhood, or area affected,”
Regulations, §  540.III.B.1, and the
noise-performance standard limiting “[n]oise volume . . . to levels that will
not be a nuisance to adjacent uses.”  Id. §
750.I.  More specifically, the DRB found that, despite the
existence of several other gravel pits within a few miles of the project site,
the proposed new gravel pit—located in closer proximity to the adjacent
residential neighborhoods—would substantially increase the noise in the area,
stating: “The Lindale/Butternut neighborhood would, with the added proposed
gravel pit and truck traffic, . . . experience substantial added noise from a
closer source.”  Along with the noise, the added “dust,
industrial level traffic and impacts on the land” resulting from “the increased
proximity and intensity of the proposed project would,” in the DRB’s view, “be
adverse.”  The DRB thus concluded that “the addition of another
operation, as proposed, will disrupt the balanced diversity of uses currently
in place and will disturb the essential character of the existing
neighborhoods.”  The application, accordingly, was denied.[1]

¶ 5.            
Applicants appealed the ruling to the environmental division, which
conducted an on-the-record review based on the transcribed hearings before the
DRB and the parties’ supplemental briefing.  See 24 V.S.A. § 4471(b)
(providing that environmental division may review municipal decisions “on the
record” where local legislative body has so authorized).  The court issued
a written decision in November 2012, affirming the DRB’s denial of the
application.[2] 
This appeal followed. 

¶ 6.            
Applicants challenge several of the DRB’s findings and conclusions as
unsupported.  Our review is limited.  Where, as here, review by the
environmental division is on the record, our standard of review on appeal is
the same as that used by the trial court.  See Devers-Scott v. Office
of Prof’l Regulation, 2007 VT 4, ¶ 4, 181 Vt. 248, 918 A.2d 230 (“Where
there is an intermediate level of appeal from an administrative body, we review
the case under the same standard as applied in the intermediate appeal.”
(quotation omitted)); accord In re Stowe Highlands Resort PUD to PRD
Application, 2009 VT 76, ¶ 7, 186 Vt. 568, 980 A.2d 233 (mem.).  
Thus, we will affirm the findings of the DRB if reasonably supported by the
evidence.  Devers-Scott, 2007 VT 4, ¶ 6. 
Our role is not to reweigh the evidence, and we will “defer to the finder of
fact when there is conflicting evidence in the record.”  Id. 
Conclusions of law, however, are analyzed independently “where such conclusions
are outside the DRB’s area of expertise.”  In re Stowe Highlands Resort,
2009 VT 76, ¶ 7.

¶ 7.            
Applicants first focus on the DRB’s finding, based on the testimony of
their traffic engineer, that the proposed gravel pit would generate one truck
trip every six minutes—or ten per hour—during operation.  Applicants
acknowledge that the DRB was “correct that the maximum frequency would be ten
truck trips per hour” but “question . . . whether it is fair or legal to . . .
judge the impact of the project on the basis of this maximum.”  They cite
evidence that the “average hourly” number of trips would correspond to one trip
every twelve minutes and that loaded trips would average about once every
twenty-four minutes.     

¶ 8.            
Applicants must do more, however, than simply “question” the DRB’s
reliance on the maximum number of trips per hour; they must show that this was
reversible error.  See In re S.B.L., 150 Vt. 294, 297, 553 A.2d
1078, 1081 (1988) (“It is the burden of the appellant to demonstrate how the
lower court erred warranting reversal.”); V.R.A.P. 28(a)(4)(A)
(appellant’s brief must set forth the issues presented, how they were
preserved, and “appellant’s contentions  and the reasons for them—with
citations to the authorities, statutes, and parts of the record on which
appellant relies”).  Applicants have not cited any law or authority or
advanced any argument to support their claim, nor have we discovered any basis
to conclude that the DRB may not rely on the maximum number of trips in
assessing the project’s impact on the character of the area.  As the trial
court here observed, “[w]e know of no barrier to a land use panel relying upon
the maximum or most onerous impacts a project may have when attempting to
determine if that project will bring undue adverse impacts to a
neighborhood.”  Absent such a showing, we discern no basis for a finding
of error.

¶ 9.            
Applicants also contend the evidence failed to support the DRB’s finding
that noise generated by the project would violate the noise-performance
standard and detrimentally affect the character of the area.  They assert
that the evidence showed, on the contrary, that the project “would add only
trivially to the already-existing noise level.”  Applicants rely on the
report and testimony of their acoustical expert that the project would not
significantly increase the average daily decibel level at nearby residences and
that the average would not exceed the 55-decibel standard employed by the
Environmental Board under Act 250.   

¶ 10.         The
DRB, however, declined to apply the daily average, finding that the frequency
and volume of noise generated during peak hours of operation constituted a more
meaningful measure of the project’s impact on the area.  The DRB also
declined to apply the 55-decibel standard, relying instead on the specific
noise-performance standard set forth in the Town’s zoning regulations, which
provides, in pertinent part, as follows: “Noise volume shall be limited to
levels that will not be a nuisance to adjacent uses. . . .  Noise levels
or frequencies which are not customary or reasonably expected in consideration
of the character of the district or neighborhood and which represent a
substantial repeated disturbance to others shall be presumed to constitute a
nuisance.”  Regulations, § 750.I. 

¶ 11.         Applying
this standard, the DRB concluded that the project would add significantly “to
the intensity of what currently exists in this area” and represent a
“substantial repeated disturbance.”  Although applicants maintain that
this conclusion was based solely on the “unfounded conjecture and hyperbole” of
area residents, it finds adequate support in the record, including the
testimony of applicants’ own expert, who acknowledged that trucks traveling on
or near Route 116 would measure over seventy decibels “as they go by your
house.”  Numerous and repeated truck trips generated by the proposed
project could thus create an additional, substantial, and continual disturbance
to the nearby residential neighborhoods.  Applicants also challenge the
DRB’s finding that—contrary to the opinion of their expert—proposed berms or
barriers would not adequately mitigate the adverse impact of the project. 
The expert’s opinion was based on the average-decibel standard, however, and
was ultimately not responsive to the DRB’s more comprehensive concerns about “noise,
dust, industrial level traffic and impacts on the land” generated by the
project.  See In re John A. Russell Corp., 2003 VT 93, ¶ 33, 176
Vt. 520, 838 A.2d 906 (mem.) (holding
that proper analysis of proposed asphalt plant’s impact on character of area should
have included “neighbors’ complaint that the frequency of loud noise would
increase and affect the use and enjoyment of nearby residences” even where
overall decibel levels would not exceed limits in preexisting permits). 
Accordingly, we discern no basis to disturb the findings.[3]

¶ 12.         Applicants
further contend the DRB mischaracterized the “neighborhood” or “area” affected
by the project to include the Lindale and Butternut Ridge residential
neighborhoods lying just to the north and west of the project respectively, and
consequently misconstrued the project’s impact on the “character” of the
area.  The Regulations define “neighborhood” as meaning “in the same area;
nearby[,] including but not limited to the area within
sight and/or sound.”  § 540.IIIB.  Ample
testimony, including that of applicants’ noise expert, established that noise
from the project would be audible from both residential neighborhoods,
particularly the adjacent Lindale area, thus plainly satisfying the “sight or
sound” criterion. 

¶ 13.         As
for the “character” of the area, the Town’s zoning regulations direct the DRB
to consider, among other things, “existing neighborhood uses, types of
buildings, noise and traffic.”  Regulations, § 540.III.B.1. 
Applying this standard, the DRB found, based on substantial testimony from
residents and others, that much of the surrounding residential area had a
“relatively quiet character” despite the fact that some noise was audible from
other existing gravel operations.  Applicants cite the opinion of their
planning expert that increasingly “intensive commercial traffic” on Route 116
and the preexisting gravel operations necessarily define the area’s character
and weigh against an adverse-impact finding.  The Town’s zoning
regulations specifically provide, however, that “the existence of one
conditional use in a neighborhood shall not be interpreted as justification for
another similar conditional use to be located there.”  Regulations,
§ 540.III.B.1.  Moreover, we have cautioned that the “cumulative
impact of . . . added noise” and other adverse effects from a project in a
mixed residential/commercial area must be carefully considered to avoid “the
risk that the character of the neighborhood will incrementally shift so that
the industrial uses dominate.”  In re John A. Russell Corp., 2003
VT 93, ¶ 33 (emphasis added).  This was precisely the analysis undertaken
by the DRB here.  Accordingly, we find no merit to the claim that the DRB
misconstrued the scope or character of the area affected.

¶ 14.         Applicants
additionally contend that the zoning regulations’ definition of “neighborhood”
is so vague as to violate due process.  See In re JAM Golf, LLC,
2008 VT 110, ¶  17, 185 Vt. 201, 969 A.2d 47 (noting
that municipal zoning ordinances “are subject to the limits” of our
Constitution, and we will not enforce those “that are vague or . . . that
delegate standardless discretion to town zoning boards”).  They assert, in
particular, that the “sight and/or sound definition of ‘area affected’ is what
gives rise to the [provision’s] being unconstitutionally vague and
overbroad.”  The deficiency allegedly results from the provision’s failure
to identify a vantage point; applicants argue that measured “[f]rom the top of
a tree on the top of a hill” the area within “sight and/or sound” could be many
miles in scope.  We find no merit to the claim.  The plain import of
the rule is to include areas within sight or sound of the proposed project,
in this case a proposed gravel pit operation adjacent to Route 116 in the Town
of Middlebury, which provides a sufficiently clear and specific location from
which to measure its impacts.

¶ 15.         Applicants
advance a similar claim with respect to the Town’s noise performance standard,
asserting that the DRB erroneously employed a “vague and unconstitutional
‘customary or reasonably expected’ noise standard.”  The foregoing is the
extent of applicants’ argument both here and in the environmental
division.  Apparently, applicants believe that anything other than a
numeric decibel standard is unacceptable.

¶ 16.         It is
not unreasonable for the Town to establish noise limit standards that take into
account surrounding uses and the expectations created by those uses.  Although
we have applied the constitutional vagueness standard in regulatory
circumstances, we have noted that we are “dealing with an area
where some imprecision and generality is necessary and inevitable”
and “[o]ur void-for-vagueness test is less
strict where the regulation is economic and the landowner can seek
clarification of its meaning or resort to administrative processes.”  Rogers v. Watson, 156 Vt. 483, 491, 594 A.2d 409, 414
(1991).  We also note that a number of courts
have upheld similar qualitative noise standards against void-for-vagueness
challenges.  See, e.g., Howard Opera House Assocs. v. Urban Outfitters,
Inc., 322 F.3d 125, 127-28 (2d Cir. 2003) (holding that City of Burlington
noise ordinance prohibiting “unreasonable noise” which “endangers the health,
safety or welfare of the community” was not unconstitutionally vague); Reeves
v. McConn, 631 F.2d 377, 386 (5th Cir. 1980) (rejecting vagueness challenge
to ordinance prohibiting sound amplification that was “unreasonably loud . . .
or a nuisance”); City of Belfield v. Kilkenny, 2007 ND 44, ¶¶ 1, 14-19,
729 N.W.2d 120 (rejecting void-for vagueness challenge to ordinance prohibiting
“nuisance in the form of  excessive . . . barking”).  We agree with
those decisions and do not find the ordinance here so vague that it is
essentially without an ascertainable
standard.       

Affirmed.    


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
In addition, the DRB found that: increased traffic from the proposed project
and “associated noise, exhaust and visual impacts” would have an undue adverse
impact on the area’s aesthetics; that the project raised traffic-safety
concerns; applicants had not met their burden of showing that there would be no
adverse impact on the acquifer/wellhead protection area in which the project
was located; the proposed noise-mitigation berms failed to comply with setback
requirements; and the project was not in conformance with the Town
Plan.   

 





[2] 
Although the trial court concluded that the evidence failed to support the
DRB’s findings on traffic safety and further found that the Town plan was insufficiently
specific to support the DRB’s findings of nonconformance, it affirmed on the
basis of the project’s failure to comply with the remaining zoning requirements
as found by the DRB.    





[3] 
Applicants also summarily claim that the DRB erred in applying the Town’s noise
standard rather than the 55-decibel standard applied by the Environmental Board
in evaluating projects under Act 250.  Although the conditional-use
section of the Regulations directs the DRB to “utilize Act 250 standards,” §
540.III.B.3, the noise-performance standard is set forth in a separate, stand
alone provision, § 750.1, and the trial court reasonably concluded, therefore,
that the Town’s intent was to employ its own specific noise standard rather
than the Act 250 standard.  See Conservation Law Found. v. Burke,
162 Vt. 115, 121, 645 A.2d 495, 499 (1993) (noting that, in attempting to
discern legislative intent, we must view regulations “as a whole” looking
principally to their language and structure).