STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 153-11-13 Vtec |
| Harrison Quarry CU Application | ENTRY ORDER |

**Decision on Cross-Motions for Summary Judgment**

James and Janet Harrison appeal the October 15, 2013 Town of Georgia Zoning Board of Adjustment (ZBA) denial of the Harrisons' application for conditional use approval of a sand and rock quarry at 1547 Skunk Hill Road in the Town of Georgia, Vermont. Now pending before the Court are cross-motions for partial summary judgment filed by the Harrisons and the Town of Georgia (the Town) as to Questions 1 and 7 of the Harrisons' Statement of Questions on appeal.

The Harrisons are represented in this proceeding by Christopher D. Roy, Esq., and the Town is represented by Joseph S. McLean, Esq.

**Factual Background**

The parties do not dispute the facts contained in the Harrisons' Statement of Undisputed Material Facts, attached to their Motion for Partial Summary Judgment. Therefore, for the purpose of putting the pending motions into context, we recite verbatim the facts contained in the Harrisons' Statement of Undisputed Material Facts[1]:

1. The Harrisons filed an application for conditional use approval with the Town of Georgia Zoning Board of Adjustment (the "Board") on August 14, 2013 (the "Application").

2. The Application sought approval for a rock and sand quarry (the "Project") located on a 103.5-acre parcel with frontage on Vermont Route 104A (the "Project Site") in the Town of Georgia (the "Town").

3. There would also be a direct connection from the Project Site to the Harrisons' adjoining parcel located on, and accessed by, Skunk Hill Road. This adjoining lot currently includes a redi-mix concrete batching plant.

---

[1] Although we recite all facts verbatim, we have omitted all references and citations to attachments.

4.   The Application is governed by the version of the Town of Georgia Zoning Regulations that took effect as of April 12, 2010 (the "Regulations").

5.   The Project Site is located in the AR-1 Agricultural/Rural Residential District (the "AR-1 District").

6.   "Sand, gravel or rock quarry" is listed as a conditional use in the AR-1 District.

7.   Section 4030.4 of the Regulations is entitled "General Standards," and provides that "[a] permit will be granted only upon a finding by the Board of Adjustment that the following standards, in addition to the district regulations and district *conditional use* standards, have been met . . . ."  (Italics in original).

8.   One of the prerequisites for approval under Section 4030.4 of the Regulations is found at Section 4030.4(2), which reads as follows:

> The character of the neighborhood, area, or district affected will not be adversely impacted and that:
>
>> a.  a nuisance or hazard will not be created to the detriment of the health, safety, or welfare of the intended users, neighbors, or the citizens of the Town;
>>
>> b.  the proposed *use* or *building* and the relationship between the *buildings* and the land will be compatible with the purposes of the district and the character of the surrounding neighborhood and will not unduly detract from abutting residences or other property;
>>
>> c.  appropriate *use* or development of adjacent property will not be impeded.  The Board will consider the *scale* of the proposed development in relation to existing and proposed *uses* and *buildings*, and the effect of the proposed *use* on the continued enjoyment and access to existing and approved *uses* in the vicinity of the proposed *use*.

(italics in original).

9.   Another prerequisite for approval under Section 4030.4 of the Regulations is found at Section 4030.4(3), which reads as follows:

> Traffic generated or patterns of ingress or egress will not cause congestion, hazard or detriment to the neighborhood or nearby intersections.  The Zoning Board of Adjustment may require a traffic study to determine compliance with this standard.

**Discussion**

The Harrisons seek summary judgment as to Questions 1 and 7 of their Statement of Questions, which ask:

1. Does Section 4030.4(2) of the Town of Georgia Zoning Regulations (the "Regulations") provide sufficiently clear standards to be enforceable under *In re Appeal of JAM Golf, LLC*, 2008 VT 110, ¶¶ 12-14, 185 Vt. 201?

7. Does Section 4030.4(3) of the Regulations provide sufficiently clear standards to be enforceable under *In re Appeal of JAM Golf, LLC*, 2008 VT 110, ¶¶ 12-14, 185 Vt. 201?

The Harrisons argue that the Town of Georgia Zoning Regulations (GZR or Regulations) § 4030.4(2) and GZR § 4030.4(3) add "unduly vague and unenforceable" terms to the conditional use standards required by 24 V.S.A. § 4414(3) and that this Court should therefore void these provisions as unconstitutional. The Town cross-moves for summary judgment and asks this Court to conclude that the provisions of GZR § 4030.4 are constitutional and enforceable.

I.   Summary Judgment Standard

The court will grant summary judgment if a moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the court judges each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. The parties agree that there is no dispute as to any material fact as to Questions 1 and 7.

II.  Standard of Review

When reviewing a municipal land use decision, we begin with the presumption that a zoning regulation is constitutional. In re Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 13 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.) (citing Hunter v. State, 2004 VT 108, ¶ 31, 177 Vt. 339). Although a regulation "should be general enough to avoid inflexible results," Town of Westford v. Kilburn, 131 Vt. 120, 125 (1973), it is unconstitutionally vague if it fails to "'specify sufficient conditions and safeguards' to guide applicants and decisionmakers . . . thus leading to 'unbridled discrimination' by the court and the [municipal panel] charged with its

3

interpretation." In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 13, 185 Vt. 201 (quoting Kilburn, 131 Vt. at 122, 125). We "look to the entire ordinance, not just the challenged subsection, to determine the standard to be applied." In re Pierce Subdivision Application, 2008 VT 100, ¶ 20, 184 Vt. 365. To be constitutional, a regulation must allow the decision maker to perform two functions in reviewing applications: "[f]irst, the regulatory provision must be specific enough to allow the decisionmaker clearly to identify the resources or features to be protected," and "[s]econd, the regulation must also provide standards by which the decisionmaker can discern the degree or level of protection that must be achieved for each identified resource or feature." Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 15.

"Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'" In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the [regulation]." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. Because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22.

III.     Regulations § 4030.4

Pursuant to 24 V.S.A. § 4414(3)(A), a municipality may condition certain uses within a zoning district on conformance with the municipality's general and specific standards. Under the general standards prescribed by § 4414(3)(A), a conditional use "shall not result in an undue adverse effect on" community facilities, the character of the area, traffic, bylaws and ordinances, and utilization of renewable energy resources. Id. (emphasis added). Our Supreme Court has held that the "adverse effect test" in a conditional use regulation "must be applied reasonably to prohibit only substantial and material adverse effects." In re Miller, 170 Vt. 64, 69 (1999). In the conditional use context, "we find no discernible difference between 'substantial and material' and 'undue.'" In re Group Five Investments, LLC Conditional Use Application, No. 34-3-11 Vtec, slip op. at 13 (Vt. Super. Ct. Envtl. Div. Dec. 4, 2012) (Durkin, J.), aff'd 2014 VT 14.

Section 4030 of the Regulations governs conditional use review in the Town of Georgia. In accordance with 24 V.S.A. § 4414(3)(A), GZR § 4030.4 requires that an application for a conditional use meet a list of "General Standards." The Harrisons first argue that General Standards 2(b) and 2(c) do not satisfy the requirements of JAM Golf. Specifically, the Harrisons point to language in each subsection, underlined below, which they allege is the type of "standardless language" which gives the ZBA "unfettered discretion":

2. The character of the neighborhood, area, or district affected will not be adversely impacted and that:

   a. . . .

   b. the proposed *use* or *building* and the relationship between the *buildings* and the land will be compatible with the purposes of the district and the character of the surrounding neighborhood <u>and will not unduly detract from abutting residences or other property</u>;

   c. appropriate *use* or development of adjacent property <u>will not be impeded</u>. The Board will consider the *scale* of the proposed development in relation to existing and proposed *uses* and *buildings*, <u>and the effect of the proposed *use* on the continued enjoyment and access to existing and approved *uses* in the vicinity of the proposed use</u>.

GZR § 4030.4(2) (underline added).

The Harrisons first argue that the meaning of "unduly detract from abutting residences or other property" is "unknowable" and that subsection (b) fails to limit the scope of "other property." (Appellants' Motion for Partial Summary Judgment at 8, filed Feb. 28, 2014.) The Town asserts that the meaning of "unduly detract" is gathered from the long history of the term "undue" in Vermont zoning and land use law as well as a common dictionary definition. (Town of Georgia's Response and Opposition to Appellants' Motion for Summary Judgment at 7–8, filed Apr. 3, 2014.) The Town further asserts that the plain meaning of the phrase "other property" includes types of property that fit the purpose of the zoning district, such as agricultural and rural land, <u>abutting</u> the proposed project. Id. at 9.

We find that General Standard 2(b) provides sufficient guidance to prevent unbridled discrimination. Subsection (b) supplements the requirement that the character of the neighborhood, area, or district will not be adversely affected by the project. In doing so, subsection (b) specifically addresses "abutting residences or other property." The purpose of

5

the Agricultural/Rural, Residential (AR-1) District limits the scope of "other property" by providing that the district is intended "to provide a place in Georgia for *agricultural* and *silviculture uses*" and to encourage low density residential use which does not interfere with "the agricultural and rural nature of the District." GZR § 3050.1; see 24 V.S.A. § 4414(3) (providing that the "character of the area affected" is "defined by the purpose or purposes of the zoning district within which the project is located"). Thus, "other property" might include agricultural, forestry, or other rural properties <u>affected</u> by the project.

Furthermore, the legislative body likely intended the term "abutting" to qualify both "residences" and "other property;" we can discern no reason why it would have endeavored to protect a residence only if it adjoins the project while protecting any other type of use regardless of whether it adjoins the project. Regardless of whether "abutting" qualifies both terms, however, "other property" is limited by the level of protection which the standard provides: it includes only those properties that will be impacted, or from which the project will "unduly detract" in some way. See <u>In re Ferrera & Fenn Gravel Pit Application</u>, No. 159-9-10 Vtec, slip op. at 17 (Vt. Super. Ct. Envtl. Div. Nov. 13, 2012) (Durkin, J.), aff'd 2013 VT 97 (stating that "[t]he ordinary meaning of "affect" indicates that the scope of an inquiry under [the regulation] will be limited to those areas that will be influenced in some way by the project").

The degree or level of protection for abutting properties provided by subsection (b) is also readily discernible. The proposed project cannot "unduly detract" from these properties. The term "undue," commonly used in land use regulation, "generally means that which is more than necessary—exceeding what is appropriate or normal." <u>Group Five Investments, LLC</u>, No. 34-3-11 Vtec, slip op. at 12 (quoting <u>Re: Quechee Lakes Corp.</u>, Nos. 3W0411-EB and 3W0439-EB, Findings of Fact, Conclusions of Law and Order, at 17 (Vt. Envtl. Bd. Nov. 4, 1985)) (internal quotation marks omitted). In common use, "detract[ing] from" something would be considered an "adverse effect," or an "unfavorable, opposed, [or] hostile" effect. See <u>id</u>. at 12. This Court is further assisted by the Vermont Supreme Court's holding that the two-step "Quechee" analysis for "undue adverse impacts" in state land use review is an appropriate guide in reviewing conditional use proposals. <u>In re Group Five Investments CU Permit</u>, 2014 VT 14, ¶ 14 (noting that the two-step Quechee analysis considers (1) whether the project will have an

6

adverse impact; and, if so, (2) whether that impact will be undue). Thus, because we conclude that General Standard 2(b) contains sufficient safeguards and will not open the door to unbridled discrimination, GRZ § 4030.4(2)(b) is not unconstitutionally vague.

The Harrisons next argue that General Standard 2(c) fails to adequately describe the meaning of the requirement that "appropriate use or development of adjacent property will not be impeded" or specify whether this provision relates to existing and/or potential uses and development. (Appellants' Motion for Partial Summary Judgment at 8, filed Feb. 28, 2014.) The Harrisons also argue that subsection (c) "fails to provide any metric or guideline against which the Board can possibly measure 'the effect of the proposed use on the continued enjoyment and access to existing and approved uses in the vicinity of the proposed use.'" Id.

In response, the Town first notes that the Vermont Supreme Court has upheld land use standards that "take into account surrounding uses and the expectations created by those uses." (Town of Georgia's Response and Opposition to Appellants' Motion for Summary Judgment at 9, filed Apr. 3, 2014 (quoting In re Ferrera & Fenn Gravel Pit, 2013 VT 97, ¶ 16.)) The Town further notes the Supreme Court's holding that the "void-for-vagueness test is less strict where the regulation is economic and the landowner can seek clarification of its meaning or resort to administrative processes." Id. (quoting Ferrera & Fenn Gravel Pit, 2013 VT 97, ¶ 16). The Town asserts that the Harrisons failed to seek any clarification or resort to administrative processes, during either the pending application or any of the Harrisons' past applications for condition use approval or amended approval. Id.

We find that taken as a whole, General Standard 2(c) sufficiently identifies the feature to be protected; the "appropriate *use* or development of adjacent property" is any use or development that aligns with the purpose of the AR-1 District. Moreover, the second sentence of this provision further details that the decisionmaker should consider the continued "enjoyment" of and "access" to existing and approved uses in the vicinity. While the terms "impeded" and "effect" in subsection (c) do not, on their own, establish the degree or level of protection required, we read these to contain a "substantial and material" effect requirement. See Miller, 170 Vt. 64, 69 (1999). As such, we find that General Standard 2(c) provides adequate safeguards for our review.

Finally, the Harrisons argue that the language of General Standard 3 underlined below is vague and standardless and therefore unenforceable:

> 3.      Traffic generated or patterns of ingress or egress will not cause congestion, hazard <u>or detriment</u> to the neighborhood or nearby intersections.  The Zoning Board of Adjustment may require a traffic study to determine compliance with this standard.

GZR § 4030.4(3) (underline added).  In arguing that the provision fails to define how "detriment" should be measured, the Harrisons note that "the [ZBA] apparently considered the phrase 'congestion, hazard or detriment' to encompass not only traffic, but noise, exhaust and visual impacts of truck traffic."  (Appellants' Motion for Partial Summary Judgment at 9, filed Feb. 28, 2014.)  The Harrisons appear to assert that because the standard can be read to encompass noise, exhaust, and visual impacts, it is unconstitutionally vague.

General Standard 3 plainly addresses the "neighborhood or nearby intersections" surrounding a proposed project, and protects these features from "congestion, hazard[,] or detriment" resulting from a proposed project's traffic or traffic patterns.  We read the prohibition on congestion, hazard, or detriment to include a "substantial and material" requirement, as the phrase "congestion, hazard or detriment" is simply an enumerated list of adverse effects.  See <u>Miller</u>, 170 Vt. at 69 (1999) (holding that adverse effects test must be applied reasonably to prohibit only substantial and material adverse effects); <u>Group Five Investments, LLC Conditional Use Application</u>, No. 34-3-11 Vtec, slip op. at 12–13.  The provision is therefore in line with the Legislature's mandate that a conditional use will not result in an undue adverse effect on traffic, and the undue adverse effect test for traffic impacts is enforceable.  See <u>Group Five Investments CU Permit</u>, 2014 VT 14, ¶ 14 (upholding the Environmental Division's use of the two-step "undue adverse impact" analysis from state land use permitting as guidance in interpreting a municipality's conditional use criteria, including traffic impacts).  Thus, because General Standard 3 contains adequate safeguards and will not lead to unbridled discrimination, GZR § 4030.4(3) is not unconstitutionally vague.

To the extent the Harrisons take issue with the ZBA's consideration of noise, exhaust, and visual impacts under this standard, they raise an issue of whether the ZBA's interpretation and application was correct, not an issue of whether the provision is unconstitutionally vague.

8

The Court reminds the parties that this is a <u>de novo</u> appeal, meaning that we review the evidence anew and decide whether the Harrisons have met their burden of showing that the proposed development conforms to the applicable regulations. 10 V.S.A. § 8504(h); see <u>Chioffi v. Winooski Zoning Bd.</u>, 151 Vt. 9, 11 (1989) (("A de novo trial 'is one where the case is heard as though no action whatever has been held prior thereto'") (quoting <u>In re Poole</u>, 136 Vt. 242, 245 (1978)). In determining whether the Harrisons conform with GZR § 4030.4(3), we will enforce the plain language of General Standard 3, in accordance with the enabling language of 24 V.S.A. § 4414(3)(A)(iii), to address only traffic and traffic patterns in the neighborhood or nearby intersections as a result of the project. We will not review noise, exhaust and visual impacts of traffic under this provision.

<u>**Conclusion**</u>

For the reasons discussed above, we find that GZR § 4030.4(2)(b), GZR § 4030.4(2)(c), and GZR § 4030.4(3) are enforceable. Because no material facts are in dispute and the issues before us in Questions 1 and 7 are solely questions of law, we conclude that the Town is entitled to Judgment as a Matter of Law as to these two questions. Therefore, we **DENY** the Harrisons' motion for partial summary judgment, and we **GRANT** the Town's cross-motion for summary judgment as to Questions 1 and 7.

Pursuant to the February 3, 2014 Scheduling Order, aside from the motions decided here, this matter is on inactive status. As directed by the February 3 Scheduling Order, Attorney Roy shall file a brief written report with the Court when:

a. Appellant's Act 250 application is deemed complete;

b. The Act 250 hearing is scheduled and held; and

c. A decision is rendered on the Act 250 application.

Electronically signed on July 18, 2014 at 11:34 AM pursuant to V.R.E.F. 7(d).

_Tom Walsh_

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division